## Unemployment Compensation Board of Review of The Commonwealth of Pennsylvania *v.* Michael Budzanoski, Appellant.

536

Argued September 10, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Michael Budzanoski,* appellant, for himself.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE ROGERS, November 7, 1975:

Michael Budzanoski, an unemployment compensation claimant, was employed by the United Mine Workers of America (UMWA), as a district president. In May, 1971, appellant was convicted in the Federal District Court for the Western District of Pennsylvania, on four counts of

violating Section 209 of the Labor-Management Reporting and Disclosure Act of 1959, (known as the Landrum-Griffin Act), 29 U.S.C. §439 (1970). On February 1, 1972, while his conviction was on appeal, the appellant was appointed to the additional position of wage rate director of the United Mine Workers International Union. On October 24, 1972, the United States Supreme Court denied appellant's petition for certiorari of the record of his conviction. On October 27, 1972, appellant was informed by the United States Department of Justice of the Supreme Court's action and advised that, under the provisions of the Landrum-Griffin Act, he was prohibited from continuing in his positions with the UMWA and the International. On November 1, 1972, appellant was informed by Federal monitors then in charge of the affairs of the UMWA that the salaries of his positions were terminated as of October 27, 1972. Appellant orally informed the International of his decision to cease work as a wage rate director and resigned in writing from his position as district president of the UMWA. Appellant's resignations were at least partly impelled by advice of his counsel that continuance in the jobs would cause him to be subject to criminal penalties.

Appellant filed a claim for unemployment compensation benefits. The Bureau of Employment Security disapproved the application on the ground that the termination of the appellant's employment was for wilful misconduct.[1] Appellant appealed the Bureau's decision and, after hearing, a referee issued his decision holding that the appellant was disqualified, not by reason of wilful misconduct, but on the ground that he had voluntarily left work without cause of a necessitous and compelling nature.[2]

---

1. Section 402(e), Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

2. *Id.* Section 402(b)(1), 43 P.S. §802(b)(1).

From that decision the appellant appealed to the Unemployment Compensation Board of Review. The Board affirmed the referee's decision without taking testimony, and that decision was appealed to this Court at No. 437 C.D. 1973. On June 12, 1974, we remanded the record to the Board for further hearing.

Another hearing was conducted by a referee acting as hearing officer for the Board. At that hearing the appellant testified fully as to the facts surrounding the termination of his positions with the UMWA and the International.

On January 29, 1975, the Board issued its decision and order, denying the appellant benefits on the ground that the appellant had voluntarily quit without cause of necessitous and compelling nature.

The appellant presses alternative grounds for reversal: (1) that the referee and Board improperly decided the case on the issue of voluntary quit because the issue originally before the Bureau was that of his alleged wilful misconduct, or (2) that his voluntarily leaving work was for the necessitous and compelling cause that his salary had been terminated.

Appellant rests his argument on the first issue upon Rule 105 of the Board of Review[3], which reads:

"When an appeal is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim. In hearing the appeal the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case may, with the approval of the parties, be heard, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby."

The appellant states that since the only issue ruled upon by the Bureau in its initial determination was that

---

3.  34 Pa. Code §101.87.

of his alleged wilful misconduct, the referee should not have considered whether, much less lecided that, he was ineligible as a voluntary quit. Although couched in terms of denial of due process, the appellant made essentially the same argument in his earlier appeal to this Court on the basis of which we remanded the record for a further hearing. Since the hearing which followed was on the issue of vountary quit, there was no violation of the Board's rule in the prcceedings which resulted in the decision and order before us on this appeal.

The appellant's second argument is that the cause for his voluntarily leaving work, which he asserts is the fact that his pay had been stopped, was necessitous and compelling and that he is not therefore ineligible under Section 402 (b) (1) of the Law. We find this contention also to be without merit.

Section 3 of the Unemployment Compensation Law, 43 P.S. §752, provides:

> "Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. *Involuntary unemployment* and its resulting burden of indigency falls with crushing force upon the unemployed worker. . . . Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed *through no fault of their own.* . . . The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this Act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own.*" (Emphasis added.)

Our Supreme Court has said that Section 3 is:

"[T]he keystone upon which the entire Act rests and the basis upon which the individual sections of the Act must be interpreted and construed. (Citations omitted.) More particularly, the relationship between §3 and §402(b)(1) is close and complimentary, calling for the construction of §402(b)'(1) in the light of the fuller, more comprehensive, and more explicit language of §3. (Citations omitted.)

. . . .

"An examination of the §3 declaration of public policy reveals that the Act is aimed at conditions arising out of 'involuntary unemployment,' the very concept with which §402(b)(1) is concerned. The use of the word 'involuntary' in the declaration of public policy section is enlightening because the Legislature equates that word with the phrase 'through no fault of their own.' " *Lybarger Unemployment Compensation Case, Department of Labor and Industry, Bureau of Employment Security v. Unemployment Compensation Board of Review*, 418 Pa. 471, 476-477, 211 A.2d 463, 466 (1965).

Assuming, as the appellant insists, that the reason for his quitting was the termination of his pay and not additional sanctions for continuing to work for the unions provided by the Landrum-Griffin Act, it remains impossible to conclude that his unemployment was through no fault of his own. His pay was terminated as a consequence of his misbehavior as a union officer; his quitting of uncompensated employment was for essentially the same cause—his own fault.

Therefore, we enter the following:

ORDER

AND NOW, this 7th day of November, 1975, the order of the Unemployment Compensation Board of Review is affirmed and the appeal herein dismissed.